Good morning and welcome to the Ninth Circuit Court of Appeals. My name is Morgan Christen. I'm one of the judges on the Circuit Court. My chambers are in Anchorage, Alaska, but I'm delighted to be sitting this week in Portland with my colleague from Phoenix, Judge Hurwitz, and we are both very pleased and grateful to thank Judge Wallach, who's joining us on our calendar this week. I just have a little bit of housekeeping before we go forward. We need a record of the cases for which we will not have argument. The first is Ruiz-Sanchez v. Garland, which is 21-1328 and 22-1388. The second is McDonald v. O'Malley, 23-35295, and the third is Smith v. Limerick, 23-35476. The first case on which we'll hear argument is United States of America v. is it Camardese? Camardese. My clerk is going to tell me he told me so. Please come right on up. If you could give me one minute, counsel, I've got to get my stuff unpacked here. Okay, I'm all set when ready when you are. Thank you, Judge. Good morning. May it please the court, Kara Sagi on behalf of the appellant, Jordan Camardese. I'd like to reserve five minutes for rebuttal if I could. Sure, just keep your eye on the clock, please. Sure thing. This appeal presents four strong claims. I'm going to start by addressing two of those claims. Let me ask you a housekeeping question, okay? On page 23 of your brief, you say that the court did not read juror's Ninth Circuit Criminal Model Jury Instruction 3-9 regarding cooperating witnesses. And I have a little note, marginal note, was it requested? And when I look in the record, there's a little footnote regarding 3-9, but it's about police officers. It's not, the request wasn't about cooperating witnesses. Is there anywhere where the request was made regarding cooperating witnesses? There is not, Your Honor. Defense counsel did not request a cooperating witness instruction, and for that reason, we understand the court's reviewing for plain error. Go right ahead. Thank you, Judge. Again, I'd like to start by addressing two of the issues. First, beginning with the preclusion of certain portions of the body camera footage, then we'll move on to the warrantless tow. So starting with the body camera footage, Mr. Camredise was denied his right to present a full and complete defense when the district court excluded portions of body camera footage depicting his arrest. You have those portions. What did they show? Your Honor, those portions were relevant to show motive. No, what did they show? Don't tell me what their relevance was. As I understand it, the judge looked at the body camera footage and said, the only places in the body camera footage where I can see the coach bag, which was the subject of your defense, being in a different place are these two places. So I will allow those to be introduced. And so my question is, what did the rest of the body camera footage that was excluded show? Your Honor, it showed a confrontational exchange between Mr. Camredise and law enforcement. It showed things like tasers being deployed, the drug, or excuse me, the dog, police dog being deployed attacking Mr. Camredise. There's yelling, there's cussing. Did it show anything with respect to the coach bag? It did, Your Honor. The portions that defense counsel published to the jury, so the video clips and the photos, those are the only areas in the body camera footage where the purse is actually depicted. Okay. The other portions of video, however, show where Officer Adleman is at different moments in time, where the purse is at those different moments in time. So although the purse- Well, but they're the two places that the portions of the video which were allowed to be admitted show that the purse was. I would say there's three, and yes, those were admitted. So there's no other location shown by the body camera footage? Not that I'm aware of. I'm envisioning freeze frames, and I think you're describing the same thing. There's freeze frames photos of this coach purse, and we don't know who moved it around, right? Just that it was moved. Correct. Okay. And the footage doesn't show who moved it? It does not. No, but it shows the purse located at different areas at different times. It shows- You were allowed to introduce evidence that the purse was in different areas at different times. Correct. So how were you harmed? How was your client prejudiced? He was prejudiced, Your Honor, because the portions of the video depicting his arrest were not admitted. That's one way- I understand that, Counsel, but how did that prejudice him? Your Honor, that was relevant to show motive and bias, and the defense- But the jury heard about that, right? I'm sorry? How did the jury not understand your defense? How were you prevented from really- It seems to me like it's a question of degree, right? Your Honor, and- You would have liked to have more, and this is a 403 balancing, isn't it? It is. I would say the district court did not understand the relevance of the arrest at all, and in fact, the judge explained that it is wholly irrelevant in certain portions of the record. So while he found it relevant for purposes of depicting the purse, he did not find it relevant as it relates to my client's arrest. You were not excluded, however, from questioning the officers about the circumstances of the arrest, were you? Yes. Were you? Defense counsel was. You're not arguing on appeal that you were somehow prejudiced by that. Your only argument is about the body camera footage. That's correct, Judge, but I mean, I think it's a holistic perspective that we have to take. Defense counsel was not able to publish those portions of video, and he also was not able to discuss it, nor was the government. Discuss the video. Was he able to discuss the circumstances of the arrest? He was not. He was expressly excluded from doing so? He was. Yes, Your Honor. Could you turn to the search, if you would, unless you have more you want to say about this? Well, and just to Your Honor's point, the government's closing argument, I think, highlights just how relevant it was. During the government's closing, it asked jurors over and over, but why? Why would officers plant these drugs on Mr. Camardese? But why? Again, repeatedly, but why? The why? Well taken. I understand your argument, but I think you're going to want to, if you could turn to the next issue. Sure. Thank you so much. And let me ask you, let me start you off with a question in this case. You argue that, you recognize that the officers could search the car pursuant to the automobile exception, correct? You're not challenging the search that revealed the gun? We are not challenging. And it seems to me you couldn't, because the automobile exception allowed that search. Your, most of your case seems to hinge to me on your contention that once they found the gun, they no longer had the ability to search the car. Because if they did, they could have completed the search there or completed it at some other place later on down the road. And I'm having trouble with that premise, so I want you to be able to respond to this. Sure, they found the gun, but there may have been ammunition in the car, there may have been a second weapon in the car. I'm just not sure why the police were required, once they found the gun under the automobile exception to the search, to the warrant provision, to cease all further activity. So tell me why you think that's the case. And isn't it reasonable for a police officer in the moment to assume if there's one firearm there might be another? Or is something else dangerous? Your Honor, there's Supreme Court case law that says that just because there's some evidence and some evidence has been found, that's not to say that there's probable cause to believe that more of the same. It doesn't have to be probable cause. We're dealing with the automobile exception. There's probable cause to know that your client committed the crime. Pursuant to that, the police may search the automobile because, the Supreme Court says, who knows, somebody might drive it away. They find one weapon. Your position is, once they find that weapon, the automobile exception no longer allows them to continue a search. Because if it did, the fact that they moved the car to another place to continue it is irrelevant. So I'm trying to figure out why you think, under the automobile exception, the ability to search the car disappears when they discover the weapon. Your Honor, we're of the position that probable cause ceased at the time the objects of the search were found. It wasn't just the gun. There's a number of items that were listed in the government's briefing, in addition to the gun, that the government claims that officers continued to have probable cause to search for. All of those items were found before the tow. Wait a minute, wait a minute. What about your client's identification? He hadn't told them who it was, right? So they can search, I think you'll agree, for additional evidence of the crime. They found the gun. They don't know who he is. He was ultimately charged with felon in possession, I think. They didn't know who he was until they got to the police station, right? Why wasn't it reasonable for them to suspect, at a minimum, that his identification might be in the car? Your Honor, your point is well taken. In my reply brief, however, I cite to the CAD reports, his identity was known before the tow. Like, a good five, ten minutes before the tow, they had figured out who he was. You're correct in that he was, his identity was discovered at the station, but at that time, the car was still at the scene. Well, wait a minute. You just said that they knew who he was before they towed, and then you said, I'm correct, that the record shows, and as I indicated, that they discovered his identification at the station. That's right. They had arrested him and taken him to the station before towing the vehicle, so that the vehicle stayed on scene as he was transported to the station. While at the station, the vehicle still at the scene, they were able to identify him. How did they do that? Your Honor, I'm, I am speculating, but I've watched the body cam. This isn't necessarily part of the record. Detective Hubel knew who Mr. Cameron was. I think he recognized him. That is correct. I think he recognized him. He recognized him. So, but he could have been wrong. They could have had, and your client hadn't told them who he was. So, why wasn't it reasonable for them to search the car, at least for his identification? Respectfully, Judge, I would disagree. The CAD report says that he was definitively, definitively identified as Jordan Cameron Deese, whether that meant he recognized... Definitively was an officer thinking he recognized him, right? Again, I, the record isn't clear. The CAD report says that he was, he was recognized as, I mean, that he was identified as Jordan Cameron Deese, and that happened a good 10 minutes before the tow. Okay, I think you and I are looking at the same parts of the record, and you've, so I don't want to belabor the point, because I think you've answered my question. Go back to just the before you get to any kind of community caretaking issue, because that's really where Judge Hurwitz had asked you to focus. And let me rephrase my, my inquiry a little bit to focus you on it. Let's assume the car was never moved to a second place, because I think that's irrelevant for purposes of the automobile exception. I'm having difficulty, even if you think that all the stuff that they discovered on the scene was relevant, why can't they keep looking in the car to see if there's something else that's relevant? It's the automobile exception. There's no, the probable cause is established by the probable cause for the arrest, which you don't challenge. And so I think, it seems to me they are entitled to search the whole car at the scene to look for evidence of the crime. And they didn't search the bag at the scene, but I think they were entitled to search the bag at the scene to look for evidence of the crime. So I'm having difficulty figuring out why moving it to another place makes a difference. And I understand, Your Honor. I, I would. Just to be clear, we're talking about the crime that they knew of at the time of arrest. Which is menacing. Yeah, that. Which is menacing. The crime for which he was arrested. Which is menacing, not. Sure. Drugs. Right? So, so make the object that they're looking for, anything else that could be relevant to that crime, make it ammunition. Make it another gun, as Judge Wallach has suggested. Why wouldn't that have been proper? Well, I, I'd like to, to quote Judge Hurwitz, who had said that there may have been other evidence, more evidence. May have been is not the standard. It is. Oh, yes it is. Under, under the automobile exception, they are entitled to search the automobile to see if there is evidence of the crime in the automobile. The probable cause to search the automobile is established by the probable cause for the arrest. So they don't have, they're entitled to rummage through the whole automobile in any place where there may be evidence of the crime. Now, whether that would cover the trunk or something is sort of a separate issue. But that's as, that's the way I understand the automobile exception. They don't have to say, oh, we found the best stuff now, let's stop. They did eventually get a warrant, by the way, but let's put that aside. So I'm, you and I seem to be missing each other. Sure. On the scope of the automobile exception, which says you may search the automobile for evidence of the crime. And I understand your Honor's point. If I could, if, if we believe that the automobile exception justified the seizure, then the next argument we make is that it was unlawful because the amount of time between when the vehicle was seized and when the warrant was actually obtained was unreasonable. That delay was unreasonable. And that's why I was going to ask you, the case law seems to say that if the exception would have allowed you to search the automobile at the scene, at the time, it is, there's no violation if you move it to another place to complete the search. Or just wait, even if it just takes a while. Why, why is that a problem? It seems to me they have what they needed at step one here, pursuant to the automobile exception, setting aside the community caretaking exception or any other exception. Why are we, what are we missing on that point? Well, respectfully, Judge, I would disagree that it means that they can search it at any point in time after it's seized. It was four days after it was seized that it was searched. And case law is clear that it still has to be reasonable under the Fourth Amendment. How does that dissipate the probable cause that existed to arrest him and the scope of the vehicle search? So assuming there was probable cause, I'm not conceding that part. Well, you don't contest there was probable cause to arrest him. Well, for purposes of this hypothetical, go ahead, knock yourself out. Assume it. I don't want to try to, you don't have a lot of time and I'm not trying to wrap you up on that. Okay. So he was arrested and I'm just trying to get, have clear communication about the scope of that search. Sure, Judge. Again, the case law still requires that any delay be reasonable. Every search and seizure under the Fourth Amendment has to be reasonable and the government does not give us any reason why there was that delay in order for us to weigh whether or not it was reasonable or whether or not the officers acted prudently. We have no explanation from the government as to why that four-day delay occurred and my client's possessory rights were interfered with. We know why it occurred. They conducted a dog sniff one day later and then they said, gee, before we do anything further, let's dot all the I's and cross all the T's. Let's go see a judge and get a warrant. And they didn't search until they got the warrant. And you think that took too long? What Your Honor just expressed is not anything that's in the record. The government has not asserted that what caused it. No, no. But we know from the record what the sequence of events was. And they didn't search the car until they got the warrant. So I think it's a quite reasonable reading of this record to say they waited until they got the warrant to search the car. I mean, they searched it right after they got the warrant, right? I, I, that, the record is unclear. The record doesn't even establish when the dog sniff happened. All we know is that the warrant and the search was executed four days later. So when the dog sniff happened in relation to that. You know when the warrant was executed, don't you? I'm sorry? You know when the warrant, do you know when it was executed? Which is four days later. Four days after the search. You know when the warrant was issued, do you not? Four days later. So it was the same day they got the warrant. That the search was executed. Yes. Correct. Okay, that's all I was, I'm sorry. Oh, I, I apologize. We're, we're over time. I see that. And we've taken you over time. So I, this was actually very helpful for me. And I appreciate your responses and your patience with our questions. I'm going to stop you there. But when you come back, we'll put two minutes on the clock. Sure thing, thank you. You bet. We'll hear from the government, please. Good morning, your honors. May it please the court. Sarah Barr appearing on behalf of the United States, and we are asking this court to affirm the district court's rulings. I'll start with the fourth amendment claim, because that appears to be of most interest to the panel. And I, I think the panel has an appropriate and correct understanding of the record. I will clarify briefly the timeline of events, because your honor was correct. At this scene, the arresting officers did not know the defendant's identity. That identity was not known until about 40 minutes later at the booking. Okay, so opposing counsel's point is that, or what I suggested in a hypothetical, I think, is that they had what they needed, right, pursuant to the automobile exception to search then, right? But they didn't. Her point is they didn't. And there was a delay that she thinks is unreasonable. What's your response to that? Right. My response to that is that the four-day delay falls well within the heartland of reasonable delay that this court and other circuits have found. Twenty-one days in the Sullivan case. Nine days in the N'Gonko case. Eight days. Five days. Three days in Noster and John's and other cases. The four-day delay is, is well within what this court has deemed to be reasonable. And the objective facts in this case show the reasonableness of it. For example, a portion of the delay was over the course of the weekend. The arrest happened on a Thursday afternoon. The local officers didn't complete their reports until the next day. That's, you can see their dates on the reports. The case transitioned from a local investigation to a task force investigation once he was identified. So it transitioned to a new group of people. A new lead agent came on board who was Does that mean from state to federal? Is that what that means? I'm sorry? Does that mean from state to federal? Correct. It was a federal, it was a regional federal and state task force. And the lead agent of that task force assigned to this case was from a different police department than the Pendleton Police Department who conducted the arrest. So those are all circumstances that this case or that this court and other courts have looked to to determine the reasonableness of the delay. And where would I find that in the record? How many of them are in the record? Well, they're all in the record because we know that the arrest happened on the 29th and the No, you're filling in a lot of blanks, it seems to me, that we don't have. This information about switching from one department to another, we can figure out when the weekend is by looking at a calendar. Sure. Is the information about switching from one department to the task force in the record? Absolutely. Detective Williamson, who was the lead agent, who was the affiant on the warrant and who conducted the search, he testified in the case. So his testimony is in there. He testified that he took over the case. He got a warrant. He executed the search. He was from the Umatilla Tribes Police Department. So it's all in the record. Let me, your argument, I think, is entirely premised on the notion that the police officers lawfully removed the car from the scene to someplace else. Correct. It is. You're relying on the community caretaking inspection? Oh, no, no. Lawfully means, I meant to include community caretaking in it. Is your answer to that question yes? I'm sorry. Let me wait until your honor finishes. Let me ask the question differently so it's not confusing. You got my attention. Let's assume that the seizure of the car, which is to say the officers taking control of it and moving it to the impound lot, was illegal. I know you don't assume that. Okay. Under those circumstances, anything that follows is irrelevant, isn't it? Correct. Sure. So focus on that for me and tell me why the seizure of the car and its movement to the impound lot was legal. Right. I think your honor's hit upon it in the earlier questioning. At the moment they found that Honda, they had probable cause to search that Honda, including that bag, for evidence of the gun brandishing menacing crime. And that evidence would include things like ammunition, an ammunition box, the gun, another gun, a magazine, identity documents. And they didn't know who owned the car. There was no license plate on the car. As I recall, the witnesses at the scene said that there were gang markings. I'm sorry, said that there were? They saw gang markings when they reported it to the police. Okay. So that was the reported basis of this confrontation, which the police were trying to figure out. The reporting was that we don't know this guy. He accosted us and accused us of gang ties. And so certainly the officers had a basis to look for some sort of evidence of gang ties or a gang relationship. So these are all the types of things that would be found in the car and in that purse that authorized them at the moment they found that car to search it. So to get back to an argument that your friend makes, she says, look, when they seized the car, they really didn't have any intention of community caretaking. They seized the car in order to search it. Let's assume that's true for a moment. Does that make a difference in this case? It does that. You can resolve this case on the automobile exception. The community caretaking is a separate justification. And I think it's a correct finding by the district court that that also applied.  Because the policy here required the officers to tow the vehicle if a vehicle is in jeopardy of theft or vandalism. Could have. They could have. But you've read our opinion, the recent en banc opinion in Anderson. Yes. What indication is there in this record contemporaneously that they had in mind a community caretaking motive as opposed to a continuation of their investigation? So there is no evidence in the record that they subjectively had an interest in community caretaking. But what this court found in Johnson, where it held that the tow was appropriate under the community caretaking provision, but that the subsequent inventory search was an unlawful pretext. One of my difficulties with going down this road is that there wasn't an inventory search in this case. And so normally we use the community caretaking exception to justify an inventory search. There was a warranted search. And so if the car was, let's assume you didn't have the automobile exception and the car wasn't properly moved under the community caretaking exception, then it seems to me all the stuff that follows after that might well be subject to question. We illegally moved the car, then we did a dog sniff, then we got a warrant. And the answer is, well, maybe all that's tainted by your illegal movement of the car. So I'm having trouble finding the community caretaking exception as a separate justification. Sure. And that's fine, because it's not required to resolve this case. But when you say that's fine, counsel, we take it very seriously. Of course. So can you back up and tell me why we shouldn't be drafting an opinion to remind the government about the appropriate boundaries of the community caretaking exception? Sure. Well, I think Garay is an apt case to look at here. That was a case, as the court is, I'm certain, aware, the defendant had a high-speed car chase, crashed it into a ditch, ran off, was captured with money and four types of drugs. And this court said, of course the police believed that there was going to be evidence of a crime in that car. But their belief that there was going to be evidence of crime in that car, the car being a crime scene, as it was here, doesn't negate their authority to remove that car under a caretaking purpose. It was in a ditch. It had to be towed. Well, at the time the district court ruled here, had we issued Anderson? Did he have the benefit of the Anderson opinion? He did not. I think not. So the answer to your question might be that we've already reminded the government of the appropriate boundaries of the community caretaking exception. So we don't need to reiterate it again. Thank you, Your Honor. No, that was really a question. I hadn't gone back to look at the dates. But it dawned on me that might be the disconnect here. I think that's right. And I think, ultimately, just the last two points I'd like to briefly make on this issue. As the court pointed out, as Your Honors pointed out, the officers here did wait to get a warrant before they searched the car. And that's ultimately what we want officers to do here. So the exclusionary rule just doesn't really serve the deterrent purpose that it's meant to serve in this case. They would have inevitably found the drugs had they found them on site, having searched it on the same PC basis that supported the tow. So the application of the exclusionary rule in this case is just not appropriate. We have to go beyond the legal exception in this case to affirm? OK. Is there anything further, Judge Wallach, Judge Hurwitz? No, unless you want to address the evidentiary issue. Unless the court has any specific questions regarding the evidentiary, it doesn't look like we do. OK. Thank you, Your Honor. Thank you for your patience with our questions. Yes. We'll hear from opposing counsel. Thank you for the extra time. Sure. I would like to address a couple points on rebuttal. Your Honor had indicated that the government was filling in a lot of gaps. And I would agree, Judge, those reasons for the delay that the government just provided, that is not in any briefing that was not argued below. As far as I can tell, the argument has always been a conclusory argument that that four-day delay is reasonable just because, because this district, other courts have ruled that longer delays have been reasonable. The difference between this case and those other cases is that those other cases, the government provided a reason. The court was able to weigh the government's interest in keeping the property with the individual's possessory interest. The other distinction. Aren't the facts a reason? The facts are in the record. The facts are, I would dispute that as well. I mean, I just, this transfer between. The chronology is certainly in the record. The chronology is in the record. I'm not disputing the timeline. You yourself told us that they got a warrant on the fourth day to immediately search it.  You have the detective's testimony in the record and so on. The detective's testimony from trial, but there's been no testimony at the suppression hearing. They were proffering arguments at the suppression hearing. Because he took over the case and so on. I would agree. I would agree. And then the other distinction is those other cases, often, more often than not, no possessory interest is interfered with. In this case, Mr. Cameron Deese's possessory interest in that vehicle was interfered with. His wife attempted to retrieve that vehicle two days before the warrant was executed. So we have a possessory interest that's affected. We don't have any reason, until today, for the delay. And that goes both to community caretaking and the automobile exception. And I see that I'm running out of time. If your honors have any other questions. Any more questions? Well, no. Counsel, I want to thank you for your excellent briefing and advocacy, both of you. It's been very helpful. Thank you so much. Thank you. We'll take this case under advisement and go on to the next case.
judges: Wallach, CHRISTEN, HURWITZ